## WESTERN ASSURANCE COMPANY v. J. D. McPIKE.

FIRE INSURANCE.   *Stipulation as to occupancy of house and increase of risk.   Action
for loss.   Instruction.   Case in judgment.*

A house belonging to D. was insured as a family residence occupied by a tenant.
The policy contained the stipulation that if the house should be used or
occupied so as to increase the risk, or if it should become unoccupied and so
remain for thirty days, without the assent of the insurer indorsed on the
policy, it should thereby become void.   The house was virtually abandoned
by the assured and his tenant for more than thirty days during the period of
the insurance, and was converted into a retail liquor saloon by some one
without authority, paying no rent and having no family.   While being thus
used and occupied the house was destroyed by fire, and the assured brought
an action upon his policy to recover the amount of money which the insurer
had agreed to pay in case of loss as therein provided for.   *Held*, that the
policy was rendered void by the assured permitting the house to be un-
occupied by a family for more than thirty days during the period of insur-
ance without the assent of the assured, and permitting it to be used and
occupied so as to increase the risk, and upon the facts stated the court should
have instructed the jury to find for the defendant.

APPEAL from the Circuit Court of Warren County.

HON. RALPH NORTH, Judge.

This action was brought by J. D. McPike against the Western
Assurance Company, of Toronto, Canada, upon a policy of fire
insurance, to recover the money alleged to be due the plaintiff by
the defendant by reason of the loss by fire of the house insured by
such policy.   The case has once before been appealed to this court,
and is reported in 61 Miss. at page 37.   The point for decision
upon the present appeal is clearly presented in the opinion of the
court.

*Shelton & Crutcher*, for the appellant.

The policy provided that "if the building became unoccupied
and so remained for more than thirty days, without the written
consent of the company indorsed on it, the policy should be void."

The only question here is one purely of law, and that is, What
is the meaning of the word "unoccupied" as used in this contract?

The authorities all hold that such words are to be construed with

reference to the subjects about which they are used. When used with reference to a dwelling-house the word means the habitual living in the house as a place of residence—a place where they dwell—of animate beings who usually dwell in such places. A dwelling-house is chiefly designed for the abode of mankind. It is occupied when human beings habitually reside in it, and unoccupied when they do not. *Whitney* v. *Black River Ins. Co.,* 28 Am. Rep. 116 ; *Phœnix Ins. Co.* v. *Tucker,* 34 Am. Rep. 106 ; *McClure* v. *Watterton Fire Ins. Co.,* 35 Am. Rep. 656 ; *Poor* v. *Humbolt Ins. Co.,* 28 Am. Rep. 228 ; *Schroeder* v. *Schweizer Lloyd Ins. Co.,* 44 Am. Rep. 67 ; *Herman* v. *Adriatic Fire Ins. Co.,* 39 Am. Rep. 644 ; *Lowenstein* v. *Ins. Co.,* 43 Am. Rep. 366.

In *Ashworth* v. *Builders' Mutual Fire Ins. Co.,* 17 Am. Rep. 117, in commenting on a similar provision, the court says : " The insurer *has the right by the terms of the policy to the care and supervision which is involved in such occupancy.*"

Applying the principles above to this case, and I submit that no occupancy short of that of a tenant living in the house as a family residence meets the requirements of this condition.

It was provided in the first condition of the policy that if the building be so used as to increase the risk the policy shall be void.

This is a separate and independent condition. It is to protect the insurer against the imposition of a heavier risk than he had agreed to assume.

To so use the building as to increase the risk is a fraud on the insurer.   *Littimer & Pells* v. *Germania Ins. Co.,* 8 Am. Rep. 600.

*M. Marshall,* for the appellee.

The words " occupied as a family residence " (which occur in the policy) are used in a unilateral contract of this sort as the words of the insurer, and are merely *descriptive* of the *kind* of house and are not a warranty that a *family* shall always live in it. *Liverpool, London & Globe Ins. Co.* v. *McGuire,* 52 Miss. 227.

If this were not so there would be no use in the condition against vacancy or non-occupancy for thirty days at a time. As for that condition, it is enough to say that the building not only was not vacant for thirty days at a time, but was not vacant at all.

As for whether selling whisky there increased the risk, that is not a matter for an expert, but of common knowledge. It would depend on how it was done.

It is not shown to have been done in such a way as in fact to increase the risk. It was not a tippling-house, the whisky was not drunk there, was not sold at night. It was sold by the bottle and taken away.

Whether it was proven to have increased the risk was a question of fact for the jury.

ARNOLD, J., delivered the opinion of the court.

The building embraced in the policy sued on was described and insured as a family residence, occupied by a tenant. There were stipulations in the policy that if the premises should be used or occupied so as to increase the risk, or if they should become unoccupied and so remain for thirty days without the assent of the insurer indorsed on the policy, the policy should become void. The testimony shows that without the knowledge or assent of the insurer the building was unoccupied as a family residence for more than thirty days before it was burned. The owner of the property, who had possession of the policy, resided in Missouri. His agent, who insured the house in December, 1881, and lived in it at the time, moved with his family seventy-five or eighty miles from the place in January or February, 1882, and had not returned or seen the premises from that time until the house was burned in September, 1882, and knew but little, if anything, of what was going on about the place and exercised no supervision over it, and had no knowledge of the house being burned until he was informed of it nearly two months after the fire by a person whom he met on a steamboat on the Mississippi River. When the agent moved with his family he left his brother and his family in the house, and afterward his brother and family moved, and the building was converted into a retail liquor house by a man who had no family, and no authority, it seems, from the owner of the property or any of his agents to occupy the premises, and was paying no rent for the same. While thus occupied, the house was

destroyed by fire. The court refused to instruct the jury for the appellant, that if they " believe from the evidence that the building became vacant or unoccupied for thirty days at any time during the continuance of the policy, without the consent of the company indorsed on the policy, they must find for the defendant, and the building was, in the sense contemplated by the policy, vacant, though some one were left to take care of it, if, in fact, it were not occupied as a family residence."

It was error to refuse this instruction. By the terms of the policy the building was to be used and occupied as a family residence. The insurer had a right under the policy to the care and supervision involved in the use and occupancy of the building as a family residence. *Ashworth* v. *Builders', etc., Ins. Co.,* 112 Mass. 423 ; *Paine* v. *Ins. Co.,* 5 N. Y. Sup. Ct. 619. In such case a practical occupancy, consistent with the purposes for which the building was insured, is intended, and an occupancy that measurably lessens the vigilance and care that would be incident to its use for such purpose is not an occupancy within the meaning of the terms of such policy. Wood on Fire Ins. 180, 181.

It is manifest from the record that the house was virtually abandoned by the assured and his agents, and that the risk was increased by the manner in which the premises were used and occupied. We are of opinion, not only that the instruction above quoted should have been given, but that the court should have instructed the jury, as requested, to find for the appellant.

*Reversed.*